## W. M. FISHBACK V. J. L. PAGE ET AL.

Delivered November 18, 1897.

**1. Executor and Administrator—Sale of Land—Confirmation.**

A confirmation of a sale by an administrator of an entire tract of land sold under an order authorizing the sale of only one-half thereof, does not pass the title, where the administrator in his report stated that the sale was made in pursuance of the authority given.

**2. Same—Same—Presumption as to Payment.**

It will not be presumed that a purchaser of land at an administrator's sale paid the purchase price, notwithstanding a recital of such payment in the deed, where the sale was illegal as to half the land.

**3. Same—Same—Presumption as to Use of Proceeds.**

It will not be presumed that an administrator devoted the proceeds of a sale of land to the payment of debts, for which purpose the sale was made, where the sale was illegal and passed no title.

APPEAL from Galveston. Tried below before Hon. WM. H. STEWART.

*J. S. Wheless,* for appellant.—1. Notwithstanding the administrator may have exceeded the authority granted him by the court in the order of sale, and sold the whole lot, if this fact was reported to the court, which, after due consideration, confirmed the action of the administrator and directed the execution of a deed to the purchaser, the court being one of general jurisdiction over the subject matter submitted to it, had this power and authority, and its action can not be attacked collaterally at this late day. Alexander v. Maverick, 18 Texas, 179; Guilford v. Love, 49 Texas, 715; Murchison v. White, 54 Texas, 78; McNally v. Haynes, 59 Texas, 583; Martin v. Robinson, 67 Texas, 368; Kleineke v. Woodward, 42 Texas, 314; Reeves v. Masterson, 80 Texas, 52; Lynch v. Baxter, 4 Texas, 431; Poor v. Boyce, 12 Texas, 443; Gillenwater v. Scott, 62 Texas, 672; Davis v. Stewart, 4 Texas, 223; Davis v. Touchstone, 45 Texas, 490.

2. If the sale by the administrator of one-half of the lot was illegal, but he received for the property $652, and applied the moneys received to the payment of the debts of the estate, the plaintiffs could not recover before refunding the $326 paid for the property, and interest on that amount at the legal rate from May 27, 1872, the date when the payment was made, to the present time. French v. Grenet, 57 Texas, 273; Johnson v. Caldwell, 38 Texas, 218; Walker v. Lawler, 45 Texas, 532; McDonough v. Cross, 40 Texas, 251; Northcraft v. Oliver, 74 Texas, 162; Halsey v. Jones, 86 Texas, 490; Mayes v. Blanton, 67 Texas, 245.

*James B. & Charles J. Stubbs,* for appellees.

WILLIAMS, ASSOCIATE JUSTICE.—Appellees, Charles N. Smith and Jessie Lee Page, who are heirs of Parker Smith, deceased, brought this action against appellant Fishback and others to recover the north half of lot 45 of section 1, on Galveston Island. From a former judgment in

favor of the defendants, plaintiffs prosecuted an appeal, the decision of this court upon which will be found in 31 Southwestern Reporter, 424. After the cause was remanded, a judgment was rendered in favor of the plaintiffs for the land sued for, and this appeal is the consequence. The other defendants disclaimed as to the land sued for, alleging that the land claimed by them was the south half of the lot.

The appellant, Fishback, in order to defeat the title which plaintiffs claimed by inheritance from Parker Smith, relied on proceedings in the administration of his estate in Grimes County. The evidence showed that the whole lot had been community property of Smith and his wife, and that the former died in 1864 and the latter in 1869; that on the 30th day of March, 1870, E. D. Johnson was appointed administrator de bonis non of the estate of Parker Smith, and that upon the inventory of said estate an undivided half of the lot in question was entered; that on the 11th day of October, 1871, an order was made by the probate court authorizing the administrator to sell "lot 45, section 1, on Galveston Island;" that on the 28th day of February, 1872, another order was entered, reciting the making and approval of an auditor's report, the presentation by the administrator of an application for the sale of real estate to pay debts, and granting same, and ordering the administrator to sell, on the first Tuesday in May, 1872, the lands described, among which was mentioned "the undivided half of lot 45, section 1, in city of Galveston."

In connection with this, there was offered in evidence a copy of an exhibit of the condition of the estate, which bears no file mark, but which was sworn to by the administrator on the 4th day of June, 1872, before the clerk of the court in which the administration was pending. In this the administrator charges himself with several sums of money, specifying the sources from which they were received, but makes no mention of any money received for the land in question. After crediting himself with amounts disbursed, the administrator states: "The administrator would further report, that he has sold the balance of the real property belonging to the estate, a report of which will be submitted at the present term of the court for approval. That he has turned over to R. S. Robinson, guardian of the minor heirs, the homestead property, situated in the city of Navasota, together with all the rentals accruing therefrom while in his possession."

Defendant also offered a report of sale, having no file mark, but sworn to before said clerk on the 6th day of June, 1872. In this the administrator says he "submits this as his report of the sale of land and city lots in pursuance of an order of this honorable court rendered at the February term, 1872." The property sold is listed in the following manner:

"The Houston city property. commonly called Parker Smith's addition to the city of Houston."

"J. Q. Yarborough bid off"

"Lot No. 7, block 14,"                                    "$15.75."

Then follows a list of lots and purchases stated in the same way, covering several pages, after which is the following:

"Galveston property, lot 45, section 1. (Outlot.)"

"To Clough & Johnson, $652."　　　　　　　　　　　　"$326.00."

Following this is a list of Harris County land sold. The prices for which the property sold are stated in the right margin of the paper in a line, the only variation being, as above indicated, in the case of the Galveston property.

Upon this report the following order was entered June 7, 1872:

"Estate of Parker Smith, ⎫
　　　"Deceased, 　　　　　⎬　June 7, 1872.
"E. J. Johnson, Adm'r. ⎭

"Now comes E. D. Johnson, administrator of the estate of Parker Smith, deceased, and files his account of the sale of land and city lots made by him on the first Tuesday in May, at the courthouse door of said county, in accordance with a decree rendered by this court at the February term thereof, A. D. 1872, and the same having been inspected by the court and found correct, and in accordance with law, the said sale is in all things confirmed and the administrator ordered to execute deeds to the purchasers as required by statute, and it appearing to the satisfaction of the court that D. W. Shannon purchased block No. 16 in Parker Smith's addition to the city of Houston, in the sum of $100, having previously purchased said block 16 of Robinson, the immediate predecessor of the said E. D. Johnson, in extinguishment of claim held by Shannon," etc.

The deed from the administrator to Clough & Johnson is dated May 28, 1872, and recorded July 7, 1874. It recites an order of the court made at the February term, 1872, for the sale of lot 45, section 1, city and county of Galveston, on a credit of six months, with security and mortgage required by statute; a sale on the first Tuesday in April, 1872; the purchase by Clough & Johnson for the sum of $652; and conveys lot 45, section 1, "in consideration of the sum of six hundred and fifty-two dollars to me in hand paid, the receipt whereof is hereby acknowledged."

The defendants, besides Fishback, showed regular title from Clough and Johnson to themselves for the south half, and Fishback showed title to himself from Clough and Johnson for the north half of the lot. The conveyance of the south half was older in date than that of the north half, and neither party disputes the title of the other defendants.

It was shown that all of the filed papers in the estate of Parker Smith had been burned with the courthouse of Grimes County, from which we infer that the report of sale and exhibit offered in evidence were found on record. There is no evidence, however, that any of the orders of the court have ever been destroyed. The orders referred to are the only ones affecting the property in question which can be found, and there is no evidence among the records that the administration has ever been closed.

Charles N. Smith testifies as follows: "That he had learned of the

interest which he and his coplaintiff had in the lot in question before the suit was brought. Had been previously advised that this property had been sold in good faith by the administrator of his father's estate, and the money derived from such sale applied to the discharge of the debts of the estate, but that he had not relinquished his claim to the property. His attorneys were to get one-half they might recover. His mother's second husband was R. S. Robinson. He did not know that his stepfather had been his guardian. Did not know E. D. Johnson, administrator of his father's estate, and that neither of the plaintiffs had received anything from the estate. They had been shown no benefits from the sale of lot 45, section 1, claimed to have been made by the administrator of his father's estate."

Upon these facts, we are of the opinion that the judgment in favor of the plaintiffs is correct. It was held on the former appeal that the order of February, 1872, had the effect to revoke that of October, 1871, and to substitute for the authority given by the last named order to sell the whole lot authority to sell only half of it. We see no reason to change our view on that point, and it does not seem to be combated.

It is contended that a confirmation of a sale made without previous authority will pass title to the land such as can not be attacked collaterally, and while the proposition is contrary to some authorities elsewhere, and especially against the reasoning in the case of Ball v. Collins, 5 Southwestern Reporter, 622, we are yet inclined to the opinion that it is true. We do not at present see how a contrary view can well be reconciled with the decision in the case of Pelham v. Murray, 64 Texas, 477, and others which might be cited in line with it.

But we find it unnecessary to go at length into that question. As we have before pointed out, the administrator reported and the court confirmed a sale made in pursuance of the February order, which authorized the sale of only one-half of the land. While the whole lot is mentioned in that report, it is not mentioned in a way to call the court's attention to the fact that a sale in excess of the authority given had been made.

The order of confirmation plainly shows that the court was approving what had been previously authorized, and not what had been done without authority. If a confirmation is to have the effect of passing title under a sale made without authority, it certainly should be made clear that the court acted upon the unauthorized act and approved it. It will not be presumed to have acted illegally.

Here a sale was authorized of half the land. The administrator sold not only half, but the whole. He made to the court a report stating that the sale was made in pursuance of the authority given, and the court approved it as having been so made. This is all consistent with the supposition that the court acted only on the sale made, as authorized, of one-half, and that the fact that the administrator had sold the other half was not called to its attention. This construction should be adopted, becauses it harmonizes the action of the court with its duty under the law. The course of procedure for the sale of land to pay debts of the

estate was prescribed by statute, and whatever the court may have had the power to do, it did not have the right to pass away the title to the land through illegal sales, and it should not be presumed to have done so, as long as its action can be reasonably explained otherwise.

We again point out the fact that the court did not act on the exhibit of June 4th. We can not presume any other orders than those relied on, because all of the proceedings refer to this one order of February as their warrant, and no circumstance suggests that there was any other authorizing the sale made.

Nor can we hold that the court should have required the plaintiffs to pay any money before allowing them to recover. It is not shown that any was ever paid to the administrator by Clough and Johnson; or if it was, that it was applied to the payment of debts of the estate. The deed acknowledges the receipt of the price, but at the same time recites that the sale was made upon a credit of six months, with security and mortgage. It was not then an uncommon thing for a deed to recite payment· of the consideration, when only securities were taken for the price. In the exhibit, made after the deed, the administrator assumes to state the moneys which he had received, and makes no mention of any paid for this land. If the sale had been legal, it perhaps would be proper to presume, after this lapse of time, that the price had been paid; but, as to half of the land, it was illegal, and did not pass the title out of the estate, and hence such a presumption should not be indulged. It is doubtful if the acknowledgment of the receipt of the consideration in the deed, the sale being unauthorized, can be considered evidence against plaintiffs that the money was paid; but, whether admissible or not, such recital was not true, or else the exhibit was not, and we can not hold that it is sufficient evidence of the fact recited.

If the money had been shown to have gone into the hands of the administrator, there still would be no evidence that he paid it out on debts of the estate. How much might be presumed in favor of the correctness of his disposition of money realized from a legal sale, we need not determine. Since the sale was illegal and passed no title, we can not presume that he devoted the proceeds, if collected, to the discharge of burdens upon the estate.

The testimony of appellee Smith is not legal evidence of the fact of receipt and application of the money by the administrator.

*Affirmed.*

Writ of error refused.